# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Appellee,<br>vs.<br><br>ALAN SALDANA-BELTRAN,<br><br>                     Appellant. | CASE NO. 14-MJ-8409-PCL-BEN<br><br>**ORDER AFFIRMING THE MAGISTRATE JUDGE'S IDENTITY FINDING AND LIFTING THE STAY OF REMOVAL** |

This is an appeal from a Magistrate Judge's identity determination and order of transfer. For the following reasons, the Magistrate Judge's identity determination is affirmed and the stay of the order to transfer the defendant is lifted.

## BACKGROUND

On January 16, 2013, Alan Saldana-Beltran was indicted by a grand jury in the Northern District of Ohio. (AR[1] at 34.) Alan Saldana-Beltran was indicted for conspiracy to possess heroin with the intent to distribute in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A), and 846. (*Id.* at 35.) An arrest warrant was issued on January 17, 2013. Appellant was arrested on May 1, 2014 in the Southern District of California. (*Id.* at 32, 45.) At his initial appearance on May 2, 2014, Appellant appeared before United States Magistrate Judge Peter C. Lewis. (*Id.* at 45.)

An identity and removal hearing was held on May 14, 2014. The Magistrate Judge found Appellant to be the person charged in the indictment and ordered the

---

[1] "AR" refers to the appellate record filed by Appellant with his brief.

defendant transferred to the Northern District of Ohio for trial. (*Id.* at 46.) Defendant contests the finding that he is the same person named in the indictment. Appellant filed a notice of appeal on May 20, 2014, and moved to stay the removal on May 29, 2014.

There is a dearth of caselaw addressing the standards to be used in a contested identity hearing or considering whether a magistrate judge's identity finding may be appealed to a district judge.

### I. APPELLATE JURISDICTION IS LACKING[2]

There is no right to appeal a magistrate judge identity finding and transfer order (historically referred to as a "removal" order from a "removal hearing"). When a defendant is arrested in a district other than where the alleged offense was committed, Rule 5 of the Federal Rules of Criminal Procedure requires a magistrate judge to determine that the arrestee is the same person named in the indictment. FED. R. CRIM. P. 5(c)(3)(D)(ii) ("the magistrate judge must transfer the defendant to the district where the offense was allegedly committed if . . . the judge finds that the defendant is the same person named in the indictment . . . .").[3] This determination, held in accordance with Rule 5, is a pretrial matter which a magistrate judge has authority to decide. See 28 U.S.C. § 636(a)(1) ("Each United States magistrate judge shall have . . . all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts . . . ."); *see also* U.S. Dist. Ct. Rules S.D. Cal. Crim. LR 57.4.a.1 (authorizing magistrate judges to exercise the jurisdiction granted by the Federal Rules of Criminal Procedure). Removal hearings and the concomitant identity

---

[2] The Court notes that the Government conceded jurisdiction. Nevertheless, the Court will inquire as to its own jurisdiction.

[3] It is curious, but likely inconsequential, that Rule 5(c)(3)(D) uses both of the terms "magistrate judge" and "judge" in the same passage. The term "judge" may be an artifact from versions of the rule predating the Federal Magistrates Act. Rule 1(c) makes clear that when Rule 5 (or any other Rule) authorizes a magistrate judge to act, "any other federal judge may also act."

findings were historically conducted by United States commissioners. *See e.g., United States v. Levy*, 268 U.S. 390, 393-94 (1925) (holding that a commissioners' decision in a removal hearing is not given res judicata effect, but may be persuasive in a second removal hearing); *see also* 1944 adoption of FED. R. CRIM. P. 40 (all removal hearings shall take place before a United States commissioner or a Federal judge)[4]; *see generally*, Peter G. McCabe, *The Federal Lawyer*, Vol. 61 (May/June 2014), "A Brief History of the Federal Magistrate Judges Program," at 44, 47 ("In the words of the Senate Judiciary Committee report, the central purpose of the Federal Magistrate Act of 1968 was 'both to update and make more effective a system that had not been altered basically for over a century and to cull from the ever-growing workload of the U.S. district courts matters that are more desirably performed by a lower tier of judicial officers.'") .

There is no provision for an appeal from an identity finding and transfer order of a magistrate judge. From the statutory silence, it is fair to presume that Congress did not intend to provide a right to appeal. In contrast, Congress did provide a right to appeal a magistrate judge's bail determination. Title 28 U.S.C. §3145. The magistrate judge's authority to set bail, like the authority to exercise the powers formerly conferred on United States Commissioners, is contained in 28 U.S.C. §636(a). Other reasons also support the conclusion that Congress did not intend to provide defendants a right to appeal a magistrate judge identity and transfer order.

A right to appellate review by a district judge would defeat the Congressional purpose of 28 U.S.C. §636 and Rule 5 to conserve the district judge's time. *United States v. Sherriffs*, 64 F.R.D. 729, 730 (E.D. Wis. (1974)) (deciding that a magistrate's removal order is not appealable and that appeal "would defeat the purpose of Rule 40(b)(5), which is to conserve the district judge's time."); *see also United States v. McCray*, 458 F.2d 389 (9th Cir. 1972) (holding there is no right to

---

[4]Effective December 1, 2002, the substance of former Rule 40(a) was moved to Rules 5 and 5.1. See Advisory Committee Notes to 2002 Amendments to FED. R. CRIM. P. 40.

appeal to the court of appeals from a removal hearing order and observing: "It is doubtful if there was any jurisdiction in the district court to review . . . the commissioner's prior approval of the removal."); *Meltzer v. United States*, 188 F.2d 916, 917 (9th Cir. 1951) ("Finally, that there is no appeal from an order of removal was laid down by this Court in *Fries v. United States*, 284 F. 825 (9th Cir. 1922). This is a leading case."); *see also United States v. Green*, 499 F.2d 538, 541 (D.C. Cir 1974) ("The upshot of it all is that once a certified copy of the indictment is produced at a removal hearing, the only issue remaining litigable is the identity of the arrestee as the indictee. The clear mandate of Rule 40 sharply limits the function and authority of the magistrate, and by the same token the jurisdiction of the district court for the transferor district.").

Finally, a right to appellate review by a district judge would delay proceedings, as it has done in this case, and provide defendants a dilatory avenue to frustrate prosecution. By omitting a right to appeal, Rule 5 balances the competing concerns of improvident removal and dilatory delay. The Advisory Committee Notes to the 1944 adoption of Rule 40 explain, "experience has shown that removal proceedings have at times been used by defendants for dilatory purposes and in attempting to frustrate prosecution by preventing or postponing transportation . . . ." *United States v. McCord*, 695 F.2d 823, 826 (5th Cir. 1983) ("The purpose of the Rule 40 removal proceeding is to afford defendants reasonable protection, to safeguard them against improvident removal to a distant point for trial and to curb a defendant's opportunity for delay and obstruction of prosecution.").

Preventing delay is important in criminal cases. *Kassin v. Mulligan*, 295 U.S. 396, 401 (1935) ("In view of the delays and obstructions that it is possible for persons accused to obtain and interpose by misuse of the right to be heard before *removal*, section 1014 is to be construed quite favorably to the government's applications.") (emphasis added). A compelling indication of Congressional intent

to prevent dilatory delay in removal cases is also evident from 28 U.S.C. § 2253.[5] Section 2253 denies the right of appeal in a habeas corpus case brought to test the validity of a warrant to remove a defendant in a criminal case. *Galloway v. United States*, 302 F.2d 457, 458 (10th Cir. 1962) ("For this same purpose Congress, by statute, has denied the right of appeal in a habeas corpus case brought to test the validity of a warrant to remove a defendant in a criminal case . . . ."). Permitting an appeal in the transferor court of a magistrate judge Rule 5 transfer order exacerbates delay and frustrates the Congressional interest in speedy prosecution in the district of indictment.

A magistrate judge is authorized to conduct identity hearings and order transfer to another district where an indictment is pending under the authority of 28 U.S.C. §636(a) and Rule 5. No statute or rule provides for a right of appeal to the district court. Permitting an appeal would invite defendants to engage in dilatory delay and frustration of prosecution. Permitting an appeal would also consume scarce resources of Article III jurists that are intended to be conserved by the office of the magistrate judge. Therefore, there is no right of appeal or review by this Court and this Court lacks jurisdiction to entertain Defendants' appeal.

Alternatively, under the Federal Magistrates Act, a district court necessarily retains general supervisory authority to review the decisions of a federal magistrate judge acting pursuant to 28 U.S.C. 636(b). *United States v. Raddatz*, 447 U.S. 667, 681 (1980) (recognizing that Congress addressed concerns of appointing non-Article III officers with judicial authority under §636(b) by requiring "the magistrate to act subsidiary to and only in aid of the district court"). Given the Article III concerns associated with designating judicial decision-making power to magistrate judges and the authority granted to district courts under the Federal Rules of Criminal Procedure and Federal Magistrates Act, this Court finds that it has discretionary authority to

---

[5] Section 2253 concerns federal habeas corpus proceedings. Subsection 2253(b) provides in part, "There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district . . . ."

review an identity finding and transfer order when a magistrate judge acts pursuant to a referral under §636(b).

In this case, the Court will exercise its discretionary supervisory authority and review the identity finding of the magistrate judge.

## II.  STANDARD OF REVIEW

The ruling in an identity hearing is nondispositive, as it does not end or dispose of a case.[6] For nondispositive matters referred to a magistrate judge under 28 U.S.C. §636(b), appeals to the district court are governed by Federal Rule of Criminal Procedure 59(a), which states in part, "[t]he district judge must consider timely objections and modify or set aside any part of the [magistrate judge's] order that is contrary to law or clearly erroneous."  FED. R. CRIM. P. 59(a); *see also* 28 U.S.C. § 636(b)(1)(A) (noting that the district court may reconsider magistrate findings that are "clearly erroneous").  A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III.  IDENTITY FINDING AND TRANSFER ORDER

Appellant contends that the magistrate judge should have applied a preponderance-of-the-evidence standard for establishing that he was the person named in the indictment issued in the Northern District of Ohio.  In addition, Appellant argues that the evidence relied on in the identity hearing was not sufficiently "competent and reliable."  In particular, Appellant argues that the testimonial evidence was exclusively hearsay and the photographic and fingerprint evidence was unreliable.

---

[6] A defendant can still pursue an identity defense if he is removed to the indicting court. *See United States v. Green*, 499 F.2d 538, 541 (D.C. Cir. 1974) ("The full panoply of defenses is, of course, available to the arrestee in the transferee court."). If a magistrate judge orders a defendant released after a removal hearing, the decision is not res judicata and while persuasive, the defendant may be again arrested and removal considered. *United States v. Levy*, 268 U.S. 390 (1924).

### A. THE PROBABLE CAUSE STANDARD

Rule 5 of the Federal Rules of Criminal Procedure does not explicitly articulate a standard for courts to apply when determining whether an arrestee is the person named in an indictment. Of the small number of courts to address the issue, most have applied a probable cause standard. *See generally United States v. Antoine*, 796 F. Supp. 2d 417, (E.D.N.Y. 2011) ("Therefore, this court finds that the magistrate judge properly applied the standard of probable cause to determine whether removal was warranted."); *United States v. Rodriguez-Torres*, No. 14 Mag. 1095 (JLC), 2014 WL 2320081 (S.D.N.Y. May 30, 2014); *United States v. Martinez-Leon*, 565 F. Supp. 2d 1131 (C.D. Cal. 2008). Rule 5.1 states that in a preliminary hearing a magistrate judge must require a defendant to appear for further proceedings where the magistrate "finds probable cause to believe an offense has been committed and the defendant committed it." FED. R. CRIM. P. 5.1.

Of course, where an indictment has already issued, there is no need for a preliminary hearing to determine probable cause. *Green*, 499 F.2d 540-41. All that remains to be decided prior to transfer is the question of the arrestee's identity. *Kassin v. Mulligan*, 295 U.S. 396, 400 (1935). The district court in *Antoine* mused that it would make little sense for an identity and removal hearing to carry a higher standard than the probable cause standard applicable to a Rule 5.1 preliminary hearing or a grand jury indictment. *Antoine*, 796 F. Supp. 2d at 420. That is true. Nevertheless, it would also make sense to have an identity standard that is less rigorous that the probable cause standard, since probable cause to believe a crime has been committed and a person named committed it has already been determined by a grand jury. The Ninth Circuit suggested as much in the habeas corpus case of *Smith v. United States*, 92 F.2d 460, 461 (1937). In *Smith*, an arrestee contended that she was not the person identified in the indictment. The court of appeals observed, "An indictment is sufficient to show probable cause that a crime has been committed. *An identity of names is sufficient to create an inference of identity* which

the petitioner must rebut." 92 F.2d at 461 (emphasis added).

Defendant cites two cases for the proposition that the standard for identity and removal hearings is higher than probable cause. This Court is not persuaded. In *United States v. Varnes*, the only reference to a standard of proof was at the end of the opinion where the court said the Government sustained its burden by a preponderance of the evidence. *Varnes*, No. 10-0203M, 2010 WL 2035573, at *5 (D. Ariz. 2010). The opinion never indicated that this was the standard to be applied. In *United States v. Teju*, the only reference to a standard of proof was a statement that the Government proved the defendant's identity by clear and convincing evidence. *Teju*, 2013 U.S. Dist. LEXIS 30863, 11 (W.D. La 2013). There is no indication in either case of the required standard. Even if these courts were applying a different, higher standard, this Court is not persuaded that the magistrate judge here was clearly erroneous.

### B.  ADMISSIBILITY OF EVIDENCE IN IDENTITY HEARINGS

Rule 1101(d)(3) of the Federal Rules of Evidence indicates that miscellaneous proceedings, such as extradition proceedings, are exempt from the specific requirements of the rules of evidence. FED. R. EVID. 1101(d)(3). Hearsay evidence is generally admissible during a removal hearing. *United States v. Whitehurst*, 116 F.R.D. 511 (D. Minn. 1988). However, the reviewing judge should determine the reliability of the evidence provided.[7] *United States v. Jeffries*, 679 F. Supp. 1114, 1118 (M.D. Ga. 1988). Once the Government has introduced reliable evidence of identity, the burden of persuasion is shifted to the defendant to rebut the presumption. *Antoine*, 796 F. Supp. at 421 (applying a probable cause standard). One law professor and former magistrate judge describes the process like this:

> The manner in which the hearing is conducted depends largely on the forms of evidence upon which the government will rely to discharge its burden of showing that the defendant is the person wanted in the district

---

[7] Caselaw is not clear as to what constitutes reliable evidence in the absence of the Federal Rules of Evidence standards.

> where the charges are pending. The prosecution, bearing this burden, will proceed first, presenting the witnesses and evidence at its disposal. The defendant has the right to cross-examine and oppose any of the material so offered. Thereafter, the defendant may offer proof in rebuttal of the identity issue, if desired.

K. Sinclair, Jr., *Practice Before Federal Magistrate Judges* (2013), §6.06 Criminal "Removal" Hearings, at 6-8.

At the identity hearing in this case, the United States relied on the testimony of Andrew Ohlson, a Federal Bureau of Investigations ("FBI") Special Agent, to establish the identity of the Appellant as Saldana-Beltran. (*Id.* at 4.) The United States also provided evidence of a fingerprint card, a copy of the arrest warrant from the Northern District of Ohio, and booking photographs of Mr. Saldana-Beltran taken in the Southern District of California. (*Id.* at 8, 10, 16, 32, 39-42.)

Agent Ohlson testified regarding the reliability of the Joint Automated Booking System ("JABS"), and he noted that the FBI places its fingerprints and booking photos in the JABS system. (*Id.* at 5-6.) He also testified that the fingerprint cards and booking photos are sent from JABS to the Criminal Justice Information System ("CJIS"), where they are analyzed. (*Id.* at 5, 10.) Agent Olson was initially alerted to Saldana-Beltran's whereabouts after Appellant was apprehended by Customs and Border Patrol ("CBP") authorities in Calexico for trying to illegally enter the United States. (*Id.* at 6.) The CBP authorities had taken fingerprints and booking photos and submitted them to JABS, who subsequently sent them to CJIS for analysis. (*Id.* at 8-9.) According to the response from CJIS, "the fingerprints came back to Alan Saldana-Beltran." (*Id.* at 10-11.)

Agent Ohlson also testified that he conducted a follow-up investigation with Special Agent Kyle Fulmer, the original case agent for the Ohio investigation, after receiving the identification from CJIS. (*Id.* at 11.) Agent Fulmer retrieved the photographs that were submitted to JABS and was able to confirm that the photographs of the Appellant matched the deportation photographs of Alan Saldana-

Beltran. (*Id.*) These deportation photographs had been originally identified as Saldana-Beltran by Roberto Villanueva, a co-defendant of Saldana-Beltran. (*Id.* at 12.) Villanueva stated that he had dealt with "Mr. Beltran on several different occasions" and that he knew that Mr. Beltran had been previously arrested and deported. (*Id.* at 13.) In exchange for his cooperation, Mr. Villanueva received a recommendation for a sentencing reduction. (*Id.* at 14.)

Throughout the hearing, Appellant's attorney raised objections based on the Federal Rules of Evidence. (*Id.* at 7, 8, 10, 12-15, 18.) These objections concerned the reliability of the photograph and fingerprint evidence that were introduced during the hearing. Each of these objections were overruled because the rules of evidence do not apply in identification and removal hearings. (*Id.* at 7, 8, 10, 12-15, 18, 25-26.) More importantly, the evidence was reliable and convincing. The Magistrate Judge concluded that even though the photographic evidence may be somewhat "tenuous," the addition of the "much stronger" fingerprint evidence convinced him by at least a preponderance of the evidence that there is probable cause to believe that the Appellant was the Alan Saldana-Beltran wanted in the Northern District of Ohio. (*Id.* at 26.)

To sum up, the government introduced photographic, fingerprint, and testimonial evidence to establish probable cause to believe that the Appellant is the Alan Saldana-Beltran charged in the Northern District of Ohio. A veteran FBI agent testified that he had followed up with the original case agent that had identified Mr. Saldana-Beltran. He testified to the reliability of the fingerprint identification system, and he concluded that the Appellant is Alan Saldana-Beltran. The magistrate judge was convinced that the evidence was sufficient to prove, by a preponderance of the evidence,[8] that the Appellant is the Alan Saldana-Beltran

---

[8] Appellant contends that, by virtue of the doctrine of judicial estoppel, the government cannot argue that the standard in an identity hearing is probable cause, as they previously argued that the standard was a preponderance of the evidence. *See Whaley v. Belleque*, 520 F.3d 597, 600 (9th Cir. 1996). This is meritless.

named in the indictment.

This Court agrees. The evidence introduced by the government, without rebuttal by the defense, is enough to satisfy the probable cause standard. Aside from a few suggestions that the evidence introduced by the government was not in compliance with the Federal Rules of Evidence – which do not apply in this case – Appellant has offered no evidence to suggest he is not the Alan Saldana-Beltran named in the indictment. Given these facts, the government has sufficiently proven identity. *Smith*, 92 F.2d at 461 ("An identity of names is sufficient to create an inference of identity which the petitioner must rebut.").

Consequently, this Court cannot say that it is left "with the definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S. at 395. Accordingly, this Court finds that the Government has met its burden of proving that the Appellant /arrestee is the Alan Saldana-Beltran named in the Northern District of Ohio indictment.

## CONCLUSION

For the reasons stated above, the Motion to Stay the Order of Removal is **DENIED**. The Magistrate Judge's identity finding and order of transfer to the Northern District of Ohio for trial is **AFFIRMED**. The temporary stay is lifted and the Defendant shall be transferred to the Northern District of Ohio forthwith.

**IT IS SO ORDERED.**
**DATED: August 1, 2014**

**Hon. Roger T. Benitez**
**United States District Judge**

---

*Whaley* concerned a state that argued in state court that a petitioner's claim was moot and then – once in federal court – turned around and argued that the petitioner needed to pursue their remedies in state court before bringing their claim to federal court. The issue there focused on whether taking incompatible positions seriously disadvantaged the habeas petitioner. In this case, Appellant retains all the rights and abilities to vigorously defend himself without any such disadvantage.